UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTER FOR BIO-ETHICAL REFORM, INC.;
GREGG CUNNINGHAM; and KEVIN
MURRAY,

       Plaintiffs,

v.

JANET NAPOLITANO, in her official capacity as
Secretary of the Department of Homeland
Security; and ERIC HOLDER, JR., in his official
capacity as Attorney General of the United States,

       Defendants.
_____/

Case No. 09-11441

Honorable John Corbett O'Meara

**OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS AND
DENYING AS MOOT MOTIONS FOR JOINDER AND TO INTERVENE**

This matter came before the court on Defendants' September 11, 2009 motion to dismiss. Plaintiffs filed a response October 2, 2009; and Defendants filed a reply brief October 9, 2009. A number of motions for joinder and motions to intervene have been filed. Pursuant to LR 7.1(e)(2)(E.D. Mich. Dec. 1, 2005), no oral argument was heard.

**BACKGROUND FACTS**

Plaintiff Center for Bio-Ethical Reform ("CBR") is a not for profit, pro-life advocacy group that, among other things, advocates against abortion through its "Reproductive Choice Campaign," which includes the posting of large, graphic pictures of aborted fetuses on trucks and aerial banners. Plaintiff Gregg Cunningham is CBR's executive director, and plaintiff Kevin Murry is a private individual affiliated with the group.

Defendants are Janet Napolitano, Secretary of the Department of Homeland Security, and Eric H. Holder, Jr., Attorney General of the United States. Both are being sued in their official capacities.

In their amended complaint filed July 9, 2009, Plaintiffs contend that "[t]his case seeks to protect and vindicate fundamental constitutional rights." Am. compl. at 1. Plaintiffs claim to challenge "the policy, practice, procedure, and/or custom of Defendants that targets for disfavored treatment those individuals and groups that Defendants deem to be 'rightwing extremists' (hereinafter RWE Policy)." Id. at 2. Plaintiffs allege that the "RWE Policy was created, adopted, implemented, and enforced through a partnership with private organizations that are political adversaries of Plaintiffs." Id. Plaintiffs further allege that the "RWE Policy was recently and publicly confirmed by the Department of Homeland Security in an assessment entitled, 'Rightwing Extremism: Current Economic and Political Climate Fueling Resurgence in Radicalization and Recruitment.'" Id.

The three counts of the amended complaint allege causes of action for violation of Plaintiffs' rights to free speech in Count I, to expressive association in Count II, and to equal protection in Count III. Plaintiffs seek

> a declaration that through the creation, adoption, implementation, and enforcement of the RWE Policy, Defendants have violated Plaintiffs' clearly established constitutional rights . . . , a declaration that the RWE Policy infringes upon the right to engage in controversial political speech in violation of the First Amendment; a declaration that the RWE Policy infringes upon the freedom of expressive association . . .; a declaration that the RWE Policy violates the equal protection guarantee of the Fifth Amendment by targeting certain individuals and groups for disfavored treatment based on the viewpoint of their speech; a permanent injunction enjoining the RWE Policy and its application to Plaintiffs' speech and activities; an order directing the disclosure of any files or databases containing information about Plaintiffs or Plaintiffs' activities . . . ; a permanent injunction enjoining the creation or maintenance of files or databases containing information about Plaintiffs or

2

> Plaintiffs' activities . . . ; a permanent injunction enjoining the disclosure of information or data about Plaintiffs or Plaintiffs' activities to private organizations . . . ; and an award of attorney fees and costs . . . .

Id. at 2-3.

## LAW AND ANALYSIS

The United States Supreme Court has held that to withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations in a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court also made it clear that for the purposes of a motion to dismiss, courts are not bound to assume the truth of a complaint's legal conclusions and that a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Id. Furthermore, factual assertions raising a question of "possible" misfeasance, as opposed to allegations with "enough heft" to establish "plausible" misfeasance, are necessary to withstand a motion to dismiss. Id. at 557.

Although Twombly was an antitrust case, the Court recently noted, "Our decision in Twombly expounded the pleading standard for 'all civil actions,' . . . ." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009)(citations omitted). In Iqbal, the plaintiffs were Arab Americans who sued the Attorney General and the FBI, alleging that the defendants confined them "as a matter of policy" because of their religion, race, and national origin, not for legitimate law enforcement purposes. Id. at 1951.

> These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim, namely, that petitioners adopted a policy of 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

Id. (citations omitted).

3

In Iqbal, the Court also affirmed that factual allegations must support legal conclusions and must "plausibly suggest an entitlement to relief." Id. To plausibly suggest an entitlement to relief, the plaintiffs' factual claims were measured against "more likely explanations," including, specifically, "a legitimate policy" of law enforcement. Id.

As in Iqbal, the plaintiffs in this case offer a very general conspiracy theory. For example, the following factual allegations are found in the amended complaint:

- As a result of the RWE Policy, there have been significant changes made in the federal government that redirect the focus and assets of the intelligence and law enforcement communities internally. ¶ 30.

- As a result of the RWE Policy, there is an emerging patter[n] of systematic abuse of state and federal law enforcement and intelligence assets to target law-abiding Americans engaged in the peaceful expression of political views. ¶ 33.

- Pursuant to the RWE Policy, Defendants do not consider a private citizen's right to bear arms to be an individual right protected by the United States Constitution. Accordingly, Defendants seek to place greater restrictions on this right. ¶ 45.

Throughout their complaint Plaintiffs fail to address affirmative conduct undertaken by the defendants. They fail to allege any time, place, or manner restrictions that Defendants have imposed on their speech. They fail to allege that Defendants taxed or punished their First Amendment activities. They fail to allege that Defendants imposed any prior restraint on their protected speech. They fail to allege any form of retaliation by Defendants for their exercise of protected speech on identified occasions. In fact, Plaintiffs challenge no law, no regulation, and no discrete act by Defendants at all.

Moreover, Plaintiffs' allegations regarding Defendants' collection and management of information gathered for law enforcement purposes also fail to state a cognizable constitutional claim, for the government may undertake law enforcement activities without violating the First

4

Amendment even when doing so directly but incidentally affects speech or other First Amendment activity. For example, in United States v. O'Brien, 391 U.S. 367 (1968), the Supreme Court held that criminalizing the destruction of draft cards, where that destruction intended a political message about the draft, did not violate the First Amendment. The Court found that the statute prohibiting destruction of draft cards advanced a governmental interest sufficient to outweigh the plaintiff's speech. Similarly, in this case Plaintiffs have failed to state a claim, given that their factual allegations do not show that Defendants' conduct does not advance legitimate and substantial governmental interests.

Finally, several of Plaintiffs' factual allegations reference matters that have been the subject of prior litigation by CBR. Plaintiffs allege, for example, that CBR's employees and volunteers were "harassed and detained" at unstated times and places by "local law enforcement officers and agencies." Am. compl. at ¶ 82. This allegation relates to prior CBR cases. See Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780 (9th Cir. 2008); Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807 (6th Cir. 2007). Plaintiffs' allegation that the Federal Aviation Administration "harassed" CBR pilots flying aerial banners protesting abortion was addressed in Center for Bio-Ethical Reform, Inc. v. City and County of Honolulu, 455 F.3d 910 (9th Cir. 2006). All of these claims are barred by *res judicata*.

For the reasons stated above, the court will grant Defendants' motion to dismiss and deny as moot the motions for joinder and motions to intervene.

## ORDER

It is hereby **ORDERED** that Defendants' September 11, 2009 motion to dismiss is **GRANTED.**

It is further **ORDERED** that all of the motions for joinder and to intervene are **DENIED AS MOOT.**

        s/John Corbett O'Meara
        United States District Judge

Date: March 30, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 30, 2010, using the ECF system and/or ordinary mail.

        s/William Barkholz
        Case Manager